**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KEVIN MADORE, | : | NO. 3:02CV-0424 (SRY) |
| *plaintiff,* | : | |
| | : | |
| V. | : | |
| | : | |
| MR. LYNCH and MR. HOYT, | : | |
| *defendants.* | : | APRIL 19, 2004 |

<u>**DEFENDANT'S
PRE-TRIAL MEMORANDUM**</u>

In accordance with the Standing Order Regarding Trial Memoranda in Civil Cases, and

absent communication or input from the plaintiff, the defendants hereby offer the following pre-

trial memorandum:

**1.** <u>**TRIAL COUNSEL:**</u>

<u>**For the Defendants:**</u>

      Stephen R. Sarnoski
      Assistant Attorney General
      MacKenzie Hall
      110 Sherman Street
      Hartford, Connecticut  06105

      Tel. (860) 808-5450

**2.** <u>**JURISDICTION:**</u>  The jurisdiction of the court is invoked under the provisions of

Sections 1331 and 1343(3) of Title 28, and Sections 1983 of Title 42 of the United States Code.

**3.** <u>**JURY/NON-JURY:**</u>  The plaintiff has claimed a trial by jury of all issues raised in

his complaint.

**4.** <u>**NATURE OF CASE:**</u>  This is a federal civil rights action brought under 42 U.S.C. §

1983 in which the plaintiff complains that he was verbally harassed and subjected to excessive

force during the course of his arrest on October 7, 1999, in violation of his rights under the Fourth Amendment to the U.S. Constitution.

    5.  **<u>STIPULATIONS OF FACT AND LAW</u>:**

    a.  At all times relevant to this lawsuit, the defendants were acting in their official capacities as Connecticut State Police troopers, under color of state law.

    6.  **<u>PLAINTIFF'S CONTENTIONS</u>:**  The plaintiff complains that he was verbally harassed and subjected to excessive force during the course of his arrest on October 7, 1999, in violation of his rights under the Fourth Amendment to the U.S. Constitution.

    7.  **<u>DEFENDANT'S CONTENTIONS</u>:**  The defendants contend that much of the plaintiff's complaint is fabricated, that they did not use excessive force upon him during the course of his arrest, and that they are entitled to qualified immunity for their actions.

    8.  **<u>LEGAL ISSUES</u>:**

    a.  Whether the defendants used excessive force upon the plaintiff during the course of his arrest in violation of the Fourth Amendment to the U.S. Constitution.

    b.  Whether the defendants are entitled to qualified immunity for their actions.

    9.  **<u>VOIR DIRE QUESTIONS</u>:**  See Tab A attached to this memorandum.

    10.  **<u>LIST OF WITNESSES</u>:**

    a.  Jeffrey Meninno, 1111 Country Club Road, Middletown, Connecticut. Trooper Meninno was in charge of the investigation in which the plaintiff was arrested for assault.  He will testify as to his actions and observations during the course of the initial investigation.

2

b.  Keith Hoyt, 1111 Country Club Road, Middletown, Connecticut.  Trooper Hoyt was dispatched to the plaintiff's home to back up Trooper Meninno.  He will testify as to his actions and observations while participating in the investigation involving the plaintiff.

c.  James Collins, 1111 Country Club Road, Middletown, Connecticut.  Trooper Collins was dispatched to the plaintiff's home to back up Trooper Meninno.  He will testify as to his actions and observations while participating in the investigation involving the plaintiff.

d.  Todd Lynch, 1111 Country Club Road, Middletown, Connecticut.  Sergeant Lynch encountered the plaintiff following his arrest at the State Police barracks in Montville.  He will testify as to his actions and observations while supervising the investigation involving the plaintiff.

11.  **EXHIBITS**:

A.  Connecticut State Police investigative report #E99-340380

B.  Photograph of the plaintiff depicting head injury following arrest

12.  **DEPOSITION TESTIMONY:**  None anticipated.

13.  **REQUESTS FOR JURY INSTRUCTIONS:**  See Tab B attached to this memorandum.

14.  **ANTICIPATED EVIDENTIARY PROBLEMS:**  To date, the plaintiff has failed to respond to interrogatories and requests for production, and has failed to make himself available for a deposition, despite a court order dated December 19, 2003 requiring him to do so. All mailings to his address of record have been returned as "Not Deliverable As Addressed, Unable to Forward."  Barring a reasonable opportunity to conduct appropriate discovery, the defendants are unable to proceed to trial.

**15.  PROPOSED FINDINGS AND CONCLUSIONS:**  Not applicable to jury trials.

**16.  TRIAL TIME:**  The defendants estimate that trial of this matter, exclusive of jury selection will require three days.

**17.  FURTHER PROCEEDINGS:**  To date, the plaintiff has failed to respond to interrogatories and requests for production, and has failed to make himself available for a deposition, despite a court order dated December 19, 2003 requiring him to do so.  All mailings to his address of record have been returned as "Not Deliverable As Addressed, Unable to Forward."  Barring a reasonable opportunity to conduct appropriate discovery, the defendants are unable to proceed to trial.  The defendants will require a reasonable opportunity to complete discovery.  Barring cooperation, the defendants will submit a motion to dismiss this case with prejudice for failure to cooperate in said discovery.

**18.  ELECTION FOR TRIAL BY MAGISTRATE:**  None made.

**19.  OTHER MATTERS:**

      **A.  PROPOSED JURY INTERROGATORIES:**  See Tab C attached to this memorandum.

      **B.  PROPOSED OPENING STATEMENT:**  None requested.

DEFENDANTS
Todd Lynch and Keith Hoyt


RICHARD BLUMENTHAL
ATTORNEY GENERAL


By: ___/s/_____
Stephen R. Sarnoski
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, Connecticut  06105
Tel: (860) 808-5450
Federal Bar #ct05129
E-mail: stephen.sarnoski@po.state.ct.us


## **CERTIFICATION**

I hereby certify that the foregoing pre-trial memorandum was mailed, first-class, postage

pre-paid, to all counsel of record on this the _____ day of _____, _____, as follows:

Kevin Madore
C/o Stephanie Hatfield
P.O. Box 1602
New London, Connecticut 06320


___/s/_____
Stephen R. Sarnoski
Assistant Attorney General

**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KEVIN MADORE, | : | NO. 3:02CV-0424 (SRY) |
| *plaintiff,* | : | |
| | : | |
| V. | : | |
| | : | |
| MR. LYNCH and MR. HOYT, | : | |
| *defendants.* | : | APRIL 19, 2004 |

<u>**PROPOSED VOIR DIRE
QUESTIONS FOR THE JURY**</u>

Counsel respectfully requests that the following questions be asked of prospective jurors:

1.  The plaintiff in this case is Kevin Madore of Griswold, Connecticut.  To the best of your knowledge, are you or any member of your family acquainted with the plaintiffs in any way?

2.  The defendants in this case are Keith Hoyt and Todd Lynch.  Each of them is employed as a Connecticut State Police trooper by the State of Connecticut, Department of Public Safety, Division of State Police.  To the best of your knowledge, are you or any member of your family acquainted with him?

3.  The following individual may be a witness in this case:

a.  Trooper Jeffrey Meninno, Connecticut State Police

b.  Trooper James Collins, Connecticut State Police

To the best of your knowledge, are you or any member of your family acquainted with this individual?

4.  To the best of your knowledge, have you, a member of your family or a close friend ever had an unpleasant experience with a police officer?

5.  If your response to question 4 is affirmative, describe the unpleasant experience of which you are aware.

6.  Do any of you have an unfavorable opinion about police officers in general?

7.  If your response to question 6 is affirmative, describe the nature of the unfavorable opinion that you hold concerning police officers.

8.  Have you, a member of your family, or a close friend ever been arrested?

9.  Have you read, heard or been exposed to unfavorable comments about the Connecticut State Police Department?

10.  A portion of the testimony in this lawsuit will come from State Police officers or their supervisors.  Have you or any member of your family ever had a personal experience, heard anything, or read anything which might make it difficult for you to believe their testimony?

11.  Do any of you believe, for any reason, that police officers have a tendency to abuse their authority?

12.  Have you or a member of your family ever been employed as a police officer?

13.  Do any of you believe that the testimony of a policy officer is entitled to greater credibility than that of any other witness, merely by virtue of the fact that the testimony comes from a police officer?

14.  Have you or a member of your family ever sued a police officer or the State of Connecticut for any reason?

15.  Have you or a member of your family ever been sued by the State of Connecticut or another governmental agency for any reason?

16.  Do you believe that, merely because the defendants have been accused of violating the plaintiff's constitutional rights, they are probably guilty of some wrongdoing?

17.  If you are selected to sit on this jury, the Court will instruct you on the law which you must apply to the facts of this case as you find them to be.  One of the Court's instructions will inform you that the burden of proof for all material facts rests with the plaintiff.  Do you understand that it is the plaintiff's responsibility to prove every fact essential to his case?

18.  Have you or a member of your household ever been involved in a domestic dispute in which the police were summoned to the home?  If so, would your experience during the course of that incident influence your ability to render a fair and impartial verdict based solely upon the facts of this case?

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KEVIN MADORE,                          :           NO. 3:02CV-0424 (SRY)
     *plaintiff,*                       :
                                       :
     V.                                 :
                                       :
MR. LYNCH and MR. HOYT,                :
     *defendants.*                      :           APRIL 19, 2004

## DEFENDANTS' PROPOSED INSTRUCTIONS TO THE JURY

The defendants hereby offer the following proposed instructions to the jury:

## I. Instructions on 42 U.S.C. § 1983

### The Statute

1.  The law to be applied in this case is the federal civil rights law which provides a remedy for individuals (or other entities) who have been deprived of their constitutional (or statutory) rights under color of state law.  Section 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

### Purpose of Statute

2.  Section 1983 creates a form of liability in favor of persons who have been deprived of rights, privileges and immunities secured to them by the United States Constitution and federal statutes.  Before section 1983 was enacted in 1871, people so injured were not able to sue state officials or persons acting under color of state law for money damages in federal court.  In

enacting the statute, Congress intended to create a remedy as broad as the protection provided by the Fourteenth Amendment and federal laws.

Section 1983 was enacted to give people a federal remedy enforceable in federal court because it was feared that adequate protection of federal rights might not be available in state courts.

*Authority: Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

## Burden of Proof

3.  I shall shortly instruct you on the elements of plaintiff's section 1983 claim, and on the elements of defendant's affirmative defenses.

The plaintiff has the burden of proving each and every element of his section 1983 claim by a preponderance of the evidence.  If you find that any one of the elements of plaintiff's section 1983 claim has not been proven by a preponderance of the evidence, you must return a verdict for the defendant.

The defendant has the burden of proving each element of his affirmative defenses.  I shall shortly instruct you on the elements of these defenses.  If you find that any one of the elements of defendant's defenses has not been proven by a preponderance of the evidence, you must disregard the defense.

*Authority: Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

### Elements of a Section 1983 Claim

4.  To establish a claim under section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law;

Second, that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and

Third, that the defendant's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff.

I shall now examine each of the three elements in greater detail.

*Authority:*  *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

### First Element - Action Under Color of State Law

### Definition

5.  The first element of the plaintiff's claim is that the defendant acted under color of state law.  The phrase "under color of state law" is a shorthand reference to the words of section 1983, which includes within its scope action taken under color of any statute, ordinance, regulation, custom or usage, of any state (or territory or the District of Columbia).  The term "state" encompasses any political subdivision of a state, such as a county or city, and also any state agencies or a county or city agency.

Action under color of state law means action that is made possible only because the actor is clothed with the authority of the state.  Section 1983 forbids action taken under color of state law where the actor misuses power that he possesses by virtue of state law.

3

An actor may misuse power that he possesses by virtue of state law even if his acts violate state law; what is important is that the defendant was clothed with the authority of state law, and that the defendant's actions were made possible by virtue of state law.

**Authority:** *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1361 (1941); *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Home Telephone & Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1880).

6.  The act of a state official in pursuit of his personal aims that is not accomplished by virtue of his state authority is not action under color of state law merely because the individual happens to be a state officer.

**Authority:** *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Stengel v. Belcher,* 522 F.2d 438 (6th Cir. 1975); *cert. denied,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed. 269 (1976).

<u>**Second Element - Deprivation of Right**</u>
<u>**Excessive Force**</u>

7.  The second element of the plaintiff's claim is that he was deprived of a federal right by each of the defendants.  The plaintiff claims that the acts of the defendants in the course of arresting him constituted excessive force in violation of the Fourth Amendment to the U.S. Constitution as applied to the States through the Fourteenth Amendment.

Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical

4

coercion or threat thereof to effect it.  Thus, police officers are justified in using reasonable physical force upon another person when and to the extent that they reasonably believe it necessary to effect an arrest or defend themselves or a third person from the use or imminent threat of use of physical force while effecting an arrest.  On the other hand, a person is not justified in using physical force to resist an arrest regardless of whether the arrest is legal or illegal.

Where an excessive force claim arises in the context of an arrest or investigative stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.  Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the alleged intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, its proper application also requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying motivation.  An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of

force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

You must also keep in mind that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

*Authority:* *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Miller v. Lovett,* 879 F.2d 1066 (2d Cir. 1989); *Esposito v. Buonome,* 647 F.Supp. 580 (D.Conn. 1986); Conn. Gen. Stat. § 53a-22(b); Conn. Gen. Stat. § 53a-23.

## Alternative Courses of Action

8. As I have explained to you, police officers are justified in using reasonable physical force upon another person when and to the extent that they reasonably believe it necessary to effect an arrest or defend themselves or a third person from the use or imminent threat of use of physical force while effecting an arrest. In order to comply with this requirement, a police officer is not required to consider and dismiss the possibility of using any other alternative type or degree of force which may have been available to him at the time he was confronted with the decision to use force in order apprehend the plaintiff. The Constitution merely requires that whatever degree of force a police officer chooses to use be objectively reasonable under the

totality of the circumstances, not that the officer pursue the most prudent course of conduct as judged by the perfect vision of 20/20 hindsight.

    *Authority:* *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Brewer v. City of Napa,* 210 F.3d 1093, 1095 (9th Cir. 2000); *Deering v. Reich,* 183 F.3d 645, 652-53 (7th Cir. 1999) (officers not required to use all feasible alternatives to avoid justifiable use of deadly force); *Roy v. City of Lewiston,* 42 F.3d 691, 696 (1st Cir. 1994) (not clear that use of mace or retreat would have been better solution in case in which use of deadly force justified); *Schulz v. Long,* 44 F.3d 643, 649 (8th Cir. 1995) (Fourth Amendment only requires that the officer's actions fall within a range of objective reasonableness); *Plakas v. Drinski,* 19 F.3d 1143, 1148 (7th Cir. 1994) (when deadly force otherwise justified, no obligation to use non-deadly alternatives first); *O'Neal v. DeKalb County, Ga.,* 850 F.2d 653, 656 (11th Cir. 1988) (police not required to use minimum of force to apprehend violent, dangerous and threatening suspect); *Estate of Fortunato v. Handler,* 969 F. Supp. 963, 973 (W.D. Pa. 1996) (inquiry is not whether deadly force might have been avoided but rather whether its use was reasonable); *Yellowback v. City of Sioux Falls,* 600 S.W.2d 554, 557 (S.D. 1999) (the inquiry is not performed ... pursuant to a type of "Monday morning quarterback" approach in which analysis rests on whether the officers should have pursued alternative strategies or a lesser degree of force).

## <u>No Right To Resist Arrest</u>

    9.  Under Connecticut law, a citizen possesses no right to resist arrest - even if he believes that arrest to be unlawful.  In this regard, Connecticut General Statutes § 53a-23 provides as follows:

        **Connecticut General Statutes § 53a-23. Use of physical force to resist arrest not justified.**  A person is not justified in using physical force to resist

an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal.

*Authority:* Conn. Gen. Stat. § 53a-23; *State v. Privitera*, 1 Conn.App. 709, 476 A.2d 605, (1984).

### Third Element:  Causation

### Proximate Cause - Generally

10.  The third element which plaintiffs must prove is that each defendant's acts were a proximate cause of the injuries allegedly sustained by the plaintiffs.  Proximate cause means that there must be a sufficient causal connection between the act or omission of each defendant and any injury or damage allegedly sustained by the plaintiff.  An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury; that is, if the injury or damage was a reasonably foreseeable consequence of each defendant's act or omission, it was proximately caused by such act or omission.  In other words, if a defendant's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

In order to recover damages for any injury, the plaintiffs must show by a preponderance of the evidence that such injury would not have occurred without the conduct of each of the defendants.  If you find that any defendant has proved, by a preponderance of the evidence, that the plaintiff complains about an injury which would have occurred even in the absence of that defendant's conduct, you must find that the defendant did not proximately cause the plaintiff's injury.

A proximate cause need not always be the nearest cause either in time or in space.  In addition, there may be more than one proximate cause of an injury or damage.  Many factors or

8

the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

A defendant is not liable if plaintiff's injury was caused by a new or independent source of an injury, or the plaintiff's own actions, which intervenes or supersedes the defendant's act or omission and the plaintiff's injury and which produces a result which was not reasonably foreseeable by the defendant.

*Authority:* *Graham v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

## II. <u>Instruction on Qualified Immunity</u>

11. If, and only if, you find that the plaintiff's constitutional rights were violated, you must next consider the defense of qualified immunity which is available to each of the defendants. Qualified immunity is an affirmative defense. This means that the defendants, not the plaintiff, bear the burden of proving the applicability of qualified immunity by a preponderance of the evidence. However, this shifting of the burden of proof from the plaintiff to the defendants applies *only* to the qualified immunity defense.

The shield of qualified immunity protects government officials from liability for damages on account of their performance of discretionary official functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The availability of the defense turns upon the objective legal reasonableness of the allegedly unlawful official action assessed in light of the legal rules that were clearly established at the time it was taken. The qualified immunity defense is intended to strike a fair

balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.  Under the doctrine of qualified immunity, a defendant will not be liable to the plaintiff if it was objectively reasonable for that defendant to believe that his acts would not violate the plaintiff's rights.  In a law enforcement context, the objective reasonableness test is met - and a defendant is entitled to qualified immunity - if police officers of reasonable competence could disagree on the legality of the defendant's actions.  Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law or those who act where the law clearly proscribed the actions taken.

        In qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather with the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene.  The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular governmental conduct.  It is sometimes difficult for an official to determine how the relevant legal doctrine will apply to the factual situation the official confronts.   If the official's mistake as to what the law requires is reasonable, however, the official is entitled to the qualified immunity defense.  Thus, the concern of the qualified immunity defense is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  A defendant is entitled to qualified immunity if you find that his actions were objectively reasonable under the totality of the circumstances as known to that defendant at the time he acted - even if you find

10

that the defendant was mistaken as to the actual legal restraints that may have existed at the time he acted.

**Authority:**  *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed. 272 (2001); *Anderson v. Creighton,* 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 343, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998); *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997); *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995); *Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995); *Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir. 1993); *Roy v. Inhabitants of the City of Lewiston,* 42 F.3d 691, 695 (1st Cir. 1994).

## III.  Instructions on Damages

### Consider Damages Only if Necessary

12.  If the plaintiff has proven by a preponderance of the credible evidence that defendant is liable on any of the plaintiff's claims, then you must determine the damages to which the plaintiff is entitled.  However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

**Authority:**  *Eulo v. Deval Aerodynamics, Inc.,* 47 F.R.D. 35 (E.D. Pa. 1969) *modified on other grounds,* 430 F.2d 325 (3d Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971); *Krieger v. Bausch,* 377 F.2d 398 (10th Cir. 1967).

### **Multiple Claims - Multiple Defendants**

13.  I have two more cautionary instructions before I define the types of damages you may award, if you find that the plaintiff has proved liability according to the standards I have enumerated.

First, you should not award compensatory damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish a one dollar injury, you could not award him one dollar compensatory damages on each claim - he is only entitled to be made whole again, not to recover more than he lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate him fully for all of the injuries.

With respect to punitive damages, you may make separate awards on each of the federal constitutional claims that is established.

Second, you must be careful to impose any damages that you may award on a claim solely upon the defendant or defendants who you find to be liable on that claim.  Although there are four (4) defendants in this case, it does not follow that if one is liable, all or any one of the others are liable as well.  Each defendant is entitled to fair, separate and individual consideration of the case without regard to your decision as to the other defendants.  If you find that only one defendant is responsible for a particular injury, then you must impose damages for that injury only upon that defendant.

Nevertheless, you might find that more than one defendant is liable for a particular injury. If two or more persons unite in an intentional act that violates another person's right, then all of those persons are jointly liable for the acts of each of them; the law does not require the injured party to establish how much of the injury was done by each particular defendant that you find

12

liable.  Thus, if you find that the defendants who you find to be liable acted jointly, then you may treat them jointly for purposes of ongoing damages.  If you decide that two or more (both) of the defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable, without breaking that figure down into individual percentages.

### Nominal Damages

14.  If you return a verdict for the plaintiff on a claim, but find that the plaintiff has failed to prove by a preponderance of the evidence that she has suffered any actual damages on that claim, then you must return an award of damages in some nominal amount such as one dollar. Nominal damages must be awarded when the plaintiff has been deprived of a constitutional right by the defendant, but has suffered no actual damage as a natural consequence of that deprivation.

**Authority:**  Adapted from 5 Hon. Leonard B. Sand, *et al., Modern Jury Instructions,* Instruction 87-88 (September 1997); *Gibeau v. Nellis,* 18 F.3d 107 (2d Cir 1994).

### Compensatory Damages

15.  The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendants' violation of the plaintiff's rights.  If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages."  Compensatory damages seek to make the plaintiff whole - that is, to compensate him for the damage that he has suffered.  (If applicable: Furthermore, compensatory damages are not limited merely to expenses that plaintiff may have

13

borne.  A prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he has suffered because of a defendant's conduct).

I remind you that you may award compensatory damages only for injuries that a plaintiff proved were proximately caused by a defendant's allegedly wrongful conduct.  The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he is reasonably likely to suffer in the near future.  You may not award compensatory damages against the defendants for conduct you find to have been merely negligent.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

**Authority:**  Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248,, 75 L.Ed. 544 (1931); Kinty v. United Mine Workers of America, 544 F.2d 706 (4th Cir. 1976), cert. denied 429 U.S. 1093 (1977); Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962); U.C. Castings Co. v. Knight, 754 F.2d 1363 (7th Cir. 1985); Luria Brothers & Co., Inc. v. Pielet Brothers Scrap Iron Metal, Inc., 600 F.2d 103 (7th Cir. 1979);

14

Connecticut Law of Torts, 3d Ed. § 174; Markey v. Santangelo, 195 Conn. 76, 485 A.2d 1305 (1985).

### **Mitigation of Damages**

16.  In considering damages to award to the plaintiffs, you must determine whether the plaintiffs could have done something to lessen the harm that they suffered.  The burden is on the defendants to prove, by a preponderance of the evidence, that the plaintiffs could have lessened the harm that was done to them, and that they failed to do so.  If the defendants convince you that the plaintiffs could have reduced the harm done to them but failed to do so, the plaintiffs are entitled only to damages sufficient to compensate them for the injury that they would have suffered if they had taken appropriate action to reduce the harm done to them.

**Authority:**  Adapted from 5 Hon. Leonard B. Sand,  *et al., Modern Jury Instructions,* Instructions 87-34 and 87-90 (September 1997).

### **Punitive Damages**

17.  If you award the plaintiffs actual damages, then you may also make them a separate and additional award of exemplary or punitive damages.  You may also make an award of punitive damages even though you find that plaintiffs have failed to establish actual damages. Punitive damages are awarded in the discretion of the jury, to punish a defendant for extreme or outrageous conduct, or to deter or prevent a defendant and others like him from committing such conduct in the future.

You may award the plaintiffs punitive damages if you find that the acts or omissions of the defendant were done maliciously or wantonly.  An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person.  An act or failure to act is wanton if

done in a reckless or callous disregard of, or indifference to, the rights of the injured person.  The

plaintiff has the burden of proving, by a preponderance of the evidence, that defendant acted

maliciously or wantonly with regard to the plaintiff's rights.

An intent to injure exists when the defendant has a conscious desire to violate federal

laws of which he is aware, or when the defendant has a conscious desire to injure plaintiff in a

manner he knows to be unlawful.  A conscious desire to perform the physical acts that caused

plaintiff's injury, or to fail to undertake certain acts, does not by itself establish that defendant

has a conscious desire to violate rights or injure plaintiff unlawfully.

If you find by a preponderance of the evidence that a defendant acted with malicious

intent to violate plaintiffs' federal rights or unlawfully injure them or if you find that a defendant

acted with a callous or reckless disregard of the plaintiffs' rights, then you may award punitive

damages.  An award of punitive damages, however, is discretionary; that is, if you find that the

legal requirements for punitive damages are satisfied, then you may decide to award punitive

damages, or you may decide not to award them.

You may not award punitive damages against the defendants for conduct you find to have

been merely negligent.

In making this decision, you should consider the underlying purpose of punitive damages.

Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous

conduct or to deter him and others like him from performing similar conduct in the future.  Thus,

in deciding whether to award punitive damages, you should consider whether defendant may be

adequately punished by an award of actual damages only, or whether the conduct is so extreme

and outrageous that actual damages are inadequate to punish the wrongful conduct.  You should

16

also consider whether actual damages standing alone are likely to deter or prevent this defendant from again performing any wrongful acts he may have performed, or whether punitive damages are necessary to provide deterrence.  Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those defendant may have committed.

If you decide to award punitive damages, these same purposes should be considered by you in determining the appropriate sum of money to be awarded as punitive damages.  That is, in fixing the sum to be awarded, you should consider the degree to which defendant should be punished for his wrongful conduct, and the degree to which an award of one sum or another will deter a defendant or persons like him from committing wrongful acts in the future.

The extent to which a particular sum of money will adequately punish a defendant, and the extent to which a particular sum will adequately deter or prevent future misconduct, may depend upon the financial resources of the defendant against which damages are awarded. Therefore, if you find that punitive damages should be awarded against the defendant, you may consider the financial resources of the defendant in fixing the amount of such damages.

*Authority:*  *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Vasbinder v. Ambach,* 926 F.2d 1333 (2d Cir. 1991); *Abraham v. Pekarski,* 728 F.2d 167 (3d Cir. 1984); *Longoria v. Wilson*, 730 F.2d 300 (5th Cir. 1984); *Lee v. Southern Homes Sites Corp.,* 429 F.2d 290 (5th Cir. 1970); *Walker v.*

*Norris,* 917 F.2d 1449 (6th Cir. 1990); *Bogan v. Stroud,* 958 F.2d 180 (7th Cir. 1992); *Crawford*

*v. Garnier,* 719 F.2d 1317 (7th Cir. 1983); *Cunningham v. City of Overland,* 804 F.2d 1069 (8th

Cir. 1986); *Wade v. Haynes,* 663 F.2d 778 (8th Cir. 1981), *aff'd sub nom., Smith v. Wade,* 461

U.S. 30 (1983); *Kennedy v. Los Angeles Police Department,* 901 F.2d 702 (9th Cir. 1990); *Green*

*v. Johnson,* 977 F.2d 1383 (10th Cir. 1992); *Jolivet v. Deland,* 966 F.2d 573 (10th Cir. 1992);

*Glover v. Alabama Dept. of Corrections,* 734 F.2d 691 (11th Cir. 1984); Connecticut Law of

Torts, 3d Ed., § 174; *Markey v. Santangelo,* 195 Conn. 76, 485 A.2d 1305 (1985).

**IV.  Special Verdict With Interrogatories**

18.  When you retire to the jury room to conduct your deliberations, I will ask you to

record your findings on a special verdict form which the clerk will provide for you.  The special

verdict form contains a number of interrogatories to which you are asked to respond either

"YES" or "NO."  You should carefully follow the instructions contained on the special verdict

form, and answer only those interrogatories which are necessary in order for you to conclude

your deliberations.  On the other hand, you should answer each and every one of the

interrogatories on the special verdict form except where the instructions indicate otherwise.

Your response to each interrogatory must be unanimous, and must reflect the conscientious

judgment of each juror.

Should you need to reach the damages issue, the special verdict form also contains

appropriate spaces in which you are asked to record the amount of damages to be awarded.  As

with your answers to each of the questions contained on the form, your award of damages, if any,

must be unanimous and must reflect the conscientious judgment of each juror.

**Authority:**  Adapted from Modern Federal Jury Instructions § 78.01, Instruction No. 78-8 (1993).

## <u>ADDITIONAL REQUESTS</u>

The parties respectfully request leave to supplement their request for jury instructions after the evidence and prior to the charging conference. This request is made in an abundance of caution and on the theory that the defendants cannot reasonably anticipate how the evidence will be presented and what instructions, in addition to the foregoing and accompanying legal issues, will be necessary to enable the jury to reach their verdict.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KEVIN MADORE,                    :          NO. 3:02CV-0424 (SRY)
    *plaintiff,*                   :
                                    :
    V.                              :
                                    :
MR. LYNCH and MR. HOYT,          :
    *defendants.*                   :          APRIL 19, 2004

**DEFENDANTS' PROPOSED**
**SPECIAL VERDICT FORM**
**(Interrogatories)**

## I. LIABILITY

### A. As to the Defendant  Keith Hoyt  - Section 1983 Claim - Excessive force:

1. Do you find that the defendant unlawfully used unreasonable force in violation of the plaintiff's federal constitutional rights in effecting his arrest on October 7, 1999?

[ ]  YES           [ ]  NO

(If you answered "NO" to this interrogatory, your deliberations are complete as to this defendant.  Please go to Section I.B below.)

2. If you answered "YES" to interrogatory no. 1 above, then do you find that the unlawful conduct on the part of this defendant was the proximate cause of injury to the plaintiff?

[ ]  YES           [ ]  NO

(If you answered "NO" to interrogatory no. 2 above, your deliberations are complete as to this defendant.  Please go to Section I.B below.)

3. If you answered "YES" to interrogatories no. 1 and 2 above, do you find that, even though this defendant used unreasonable force in effecting the arrest of the plaintiff, he is nonetheless entitled to qualified immunity for his actions?

[ ]  YES           [ ]  NO

(Your deliberations are complete as to this defendant.  Please go to Section I.B below.)

**B.  <u>As to the Defendant  Todd Lynch  - Section 1983 Claim - Excessive force</u>:**

1.  Do you find that the defendant unlawfully used unreasonable force in violation of the plaintiff's federal constitutional rights in effecting his arrest on October 7, 1999?

[ ]  YES                    [ ]  NO

(If you answered "NO" to this interrogatory, your deliberations are complete as to this defendant.  Please go to Section II below.)

2.  If you answered "YES" to interrogatory no. 1 above, then do you find that the unlawful conduct on the part of this defendant was the proximate cause of injury to the plaintiff?

[ ]  YES                    [ ]  NO

(If you answered "NO" to interrogatory no. 2 above, your deliberations are complete as to this defendant.  Please go to Section II below.)

3.  If you answered "YES" to interrogatories no. 1 and 2 above, do you find that, even though this defendant used unreasonable force in effecting the arrest of the plaintiff, he is nonetheless entitled to qualified immunity for his actions?

[ ]  YES                    [ ]  NO

(Your deliberations as to liability are complete.  If you answered "YES" to interrogatories 1 and 2, and "NO" to interrogatory no. 3, in either Sections A or B above, you have found one or both defendants liable to the plaintiff.  If you have found one or both defendants liable to the plaintiff, you must go on to consider damages in Section II below.  If you did not find either defendant liable to the plaintiff, your deliberations are complete.  Sign and date the verdict form and return it to the clerk.

**II.  <u>DAMAGES</u>**

If you answered "yes" to the interrogatories in Part I above, you have found one or more of the defendants liable to the plaintiff.  You may, therefore, award damages against them.

1.  Do you find that the plaintiff, Kevin Madore, has proved actual damages suffered as the result of the defendant's wrongdoing?

[ ]  YES                    [ ]  NO

2

2.  If you answered "yes" to interrogatory no. II.1, what amount of money in actual damages is fair and just to compensate the plaintiff for the injuries inflicted upon him by the defendants?

$ _____

3.  If you answered "no" to interrogatory no. II.1, you have found that the plaintiff, has proved that the defendants violated his constitutional rights, but that he failed to prove actual damages.  You must, therefore award nominal damages in an amount not to exceed $10.00.  Enter that amount below.

$ _____

4.  If you awarded either actual or nominal damages to the plaintiff in interrogatories II.2 or II.3 above, and keeping in mind the Court's instruction on punitive damages, do you find that one or both defendants should be punished or deterred from future misconduct by an award of punitive damages in addition to that already listed above?

[ ]  YES                              [ ]  NO

5.  What amount of punitive damages is fair and just in order to punish each defendant, or to deter him/her from future misconduct?

As to defendant Keith Hoyt:              $ _____

As to defendant Todd Lynch:              $ _____

Your deliberations are complete.  Please sign and date this form.

_____          _____
Foreperson                                                  Date